## GROVES et al. *v.* C. R. NUTT AND WIFE.

It is the duty of the courts of each State in the Union to give effect to all acts, deeds, wills and obligations lawfully executed in any other State of the Union when brought in contestation, as far as can be done without the manifest infringement of the settled policy of the State where the contestation arises.

A daughter under the will of her father, valid by the laws of the State where it was executed, on receiving a legacy of money and bank stock executed an obligation to carry out the provisions of the will, by leaving at her death, if she died without issue, the money and bank stock which she had received to the surviving children of the testator. *Held* : that such an obligation being a valid one by the laws of the State where it was executed, would be enforced by our courts.

The acceptance of a legacy burdened with a *modus* or lawful charge under a will, is itself a contract on the part of the person accepting, obliging him impliedly, at least, to comply with the conditions imposed by the will.

APPEAL from the Fourth District Court of New Orleans, *Reynolds, J.*
*A. T. Steel* and *J. M. Chilton*, for plaintiffs. *C. Roselius* and *Mott & Frazer*, for defendants and appellants.

Argument of Counsel for plaintiff :

In his will, *Benjamin Blake* uses these words : " I give to my daughters, *Susan, Catharine* and *Adeline,* thirty-five shares, each, of Virginia Bank stock, to be held in trust by my trustees hereinafter named, until each of my said daughters arrives to the age of twenty-one years, or marries ; and in the event of either of my said daughters dying without leaving child or children living at the time of their death, the said bank stock, so given to them, is to return back and be considered as my estate, and be divided equally among my other children."

He then directs, after the payment of certain special legacies, that all the funds arising from the sale of all his property, real and personal, should be divided equally among his six children—*Frances, Susan, Catharine, Adeline, Benjamin* and *June Louisa*—the portion given to the last five named to be held in trust, &c., " on the same conditions and limitations as is directed and made with respect to the other devises to them in this my will."

Plaintiffs then offered as evidence, an indemnifying and refunding bond made by *Susan E. Blake,* through *Conway R. Nutt,* her agent, specially empowered thereto, in favor of *Dr. Austin Brockenbrough,* Executor, &c., recognizing her obligation to comply with the limitations of her father's will and to return the money and stock received by her from the executor, upon the happening of the contingency provided for.

Now by the terms of the will of *Benjamin Blake, Susan E. Blake* did not receive the sum of $10,546 85, in full property, but only on condition that if she died childless, it was to be returned to his estate, for distribution among the other legatees ; or she received a title to that legacy, analagous to our usufruct ; she had the use of this money during her life, and at her death it went to her children, if she left children, if not, it went to the other legatees, under the will of her father.

This will was made in Virginia, was probated in Virginia, and all the property to be affected by its provisions was in Virginia at the time of *Benjamin Blake's* death, and the will was actually carried into effect and executed in Virginia.  *There* she received the money and bank stock left her in the will, and *there* she obtained payment of the money and delivery of the stock, by admitting in an indemnifying and refunding bond, that she was bound to restore it, &c.

If *Susan E. Blake* received the money and stock *only* by recognizing the validity of that will, actually as well as tacitly, and the force of that obligation, and did thus recognize them, and such obligation and recognition was binding there, then the money did not become her property by its receipt ; it remained her father's money, to be returned in case she died childless, she could not change her title to that money and stock, or her obligation to return it to her father's estate by an act of hers—that is, by removal to Louisiana.

It does not matter whether this will would have been valid if it had been made in Louisiana : *It was not made here* ; nor was it ever intended to be enforced here. The whole proceedings had with reference to it were in Virginia, and under her laws ; *there Susan E. Blake's* title was created, and her obligations were incurred and assumed, and, according to the laws of Virginia alone, must the validity of that will and the force of those obligations be examined.

If, in accordance with the provisions of those laws, *Susan E. Blake* assumed an obligation, or acquired a title of a limited nature, she cannot, by a removal to Louisiana, change the nature of her right and title and make it absolute, or destroy her obligations already incurred.

In the case of *Hayden* v. *Nutt,* 4 An. R. 69, (66 to 73,) the Supreme Court examined with great care the same questions now presented, and upon the same identical showing of facts ; that is, the questions in regard to *Susan E. Blake's* right to the money derived from her father's estate ; the controversy there was between a creditor of *Conway R. Nutt* and *Mrs. Nutt* ; her defence was conducted by lawyers, all of whom were familiar with both the common and civil law, and the payment of an immense sum of money (to wit, the whole of *Dr. Nutt's* liabilities,) depended upon its decision. It was argued ably and elaborately by the defendants, and after a long and patient investigation, the court decided in favor of the plaintiff. I refer your Honors to the opinion delivered by Judge Slidell, which I consider to be conclusive in our

favor, as to this matter. You will perceive that he reviews the case of *Harper* v. *Stanbrough*, which is referred to by the defendants as authority.

The will of *Benjamin Blake* was valid at common law—which is the law of Virginia—as an *executory devise*, by which *Susan Blake* took a fee simple interest in the property bequeathed, determinable upon her dying unmarried or without issue, upon which event the whole fee was limited over by way of reversion to her surviving brothers and sisters.

It is true, that as a contingent remainder, a *fee* cannot be limited over after a *fee*. 1 Lomax, 409, 417, ch. 1, sec. 1. The reason is, that a remainder requires a *particular* estate, carved out of the fee, to support it, and both constitute a whole, being only divided *parts* of the same inheritance. Therefore, if the *whole* fee or inheritance is *first* limited, there can be *no remainder*. Ibid.

It is unnecessary to examine into all the subtle distinctions growing out of the doctrine, of remainders, as such doctrine is inapplicable to this case; and we will proceed to show that, as an "*executory devise*," the will of *Benjamin Blake* is valid.

An "executory devise" is a limitation, by *will*, of a *future* estate in land, which cannot, consistently with the rules of law, take effect as a remainder. 3 Lomax, 279, ch. 16, sec. 1. And although the common law allowed no *remainder* to be limited over *after an estate in fee simple*, nor a freehold to be commenced *in futuro*, yet, indulgence to testators induced judges to dispense with this rule in case of wills. Ibid., 279, sec. 2.

There are three kinds of executory devise: 1st, Where the testator gives the *whole* fee, but qualifies the dispositions by some future contingency, on the happening of which, the estates shall go over to some other person. 3 Lomax, 280, secs. 3 and 4. Of the first kind is a *fee* limited *after a previous fee* has been limited. As where a man devised lands to his second son and his heirs forever; and if his second son died without issue, living his third son; then to such third son and his heirs forever—it was decided that devise was good as an executory devise, though not as remainder. Ibid. So, if he gave to his son B one estate, and to his son C another, with a proviso that, if either died before marriage, or before twenty-one years, and without issue of their bodies, then, the share of the one so deceased should go to his surviving brother—it was held good as an executory devise. Ibid, p. 281.

So, where the devise was to several, with directions that the estate should go to survivors, on the death of one without issue, then living, it was held good as an executory devise. Ibid.

In consequence of another rule of law, that an executory devise could not be barred or prevented as a remainder often might, by fine and recovery, (3 Lomax, 283, sec. 9,) it became necessary to prescribe certain bounds to this class of devises. It was therefore limited to the period of a life in being. Ibid, 284, and the cases cited in that and following pages, to 288. See also, ibid, sec. 22, p. 295.

The will of *Benjamin Blake* belongs strictly to this class of executory devises, and is valid under all the rules cited by Mr. Lomax, whose Digest relates to the law of Virginia, where *Blake's* will was made. See also 2 Grat., 506, 1 ib. 302; 2 Leigh, 119, 6 Munford, 453. See also Digest of Virginia Statutes, p.

The third class of *executory devises* embraces *chattles*, that is, a term of years, or *any personal* estate. 3 Lomax, 293, 297. Blackstone concurring in all these positions.

I do not think a doubt can exist, that we are entitled to have and to recover from *Mrs. Nutt* four-fifths of the $10,546 85 received by *Susan E. Blake*, from her father's estate or the sum of $8,437 50, and such interest as the law allows.

*Mrs. Nutt* received the whole of *this* $10,546 58, as she herself says, on the 16th day of December, 1839. *Equitably*, at least, she owes interest from that time on four-fifths of it, and, I think *legally* also, as I now proceed to show.

The obligation to pay this money arose in virtue of the provisions of the will of *Benjamin Blake*, and of obligations incurred or assumed by *Susan E. Blake*, in receiving the legacy left to her in that will, all of which receive their force and effect from the laws of the State of Virginia—those laws are in evidence—*by those laws interest is due from the time an obligation is demanded;* we had no right to demand this money until the death of *Susan E. Blake*, and it was demandable upon her death, and her succession owed interest upon it from the

time it was due. We had the right to demand the amount from *Mrs. Nutt* only, at the time she received it, or, on the 16th day of December, 1839.

If the document presented by the defendants, as the will of *Susan E. Blake* is really of binding force and effect, then, as universal legatee of *Susan E. Blake*, *Mrs. Nutt* would be bound by the obligations of *Susan E. Blake* or of her succession, and would owe interest from the time of her death. Or if, as we say, that document is not the will of *Susan E. Blake*, then, the money at the time of its receipt was bearing interest at the rate of six per cent. per annum; and, therefore, by its receipt, *Mrs. Nutt* incurred the obligation to pay interest also. C. C. 1933, 2531.

Now *we* contend, that *Susan E. Blake* made no will. If, however, the Court is of opinion that *Susan E. Blake* did make a will, and that *Mrs. Nutt* is the universal legatee under that will, then she owes interest at the rate of six per cent. per annum on $8,437 50, from the last day of May, 1839, till paid. If not, then *Mrs. Nutt* owes interest on the same sum, from the 16th day of December, 1839, till paid, at the rate of five per cent. per annum.

The reasons enumerated above, apply only to the money claimed on account of the provisions and limitations of *Benjamin Blake's* will, there is, however, still another reason why interest should be paid by *Mrs. Nutt* on that money, and also on the $6,000 from the day it was received by her, that is, from the 16th of December, 1839, on which day, she says she received it.

The Code, in treating of *quasi* contracts, says, C. C. 2279, " He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." C. C. 2289, "If there be any want of good faith on the part of him who has received, he is bound to restore, not only the capital, but also the interest on the proceeds, from the day of the payment."

Now, the mere taking of the money in her own name, when she knew that it belonged to others, was in bad faith. But there was a peculiar want of good faith in the receipt of the $8,437 50, (plaintiff's share of the money which had been received by *Susan E. Blake*, from her father's estate.) *Mrs. Nutt* knew the source from which it came, and the conditions and limitations attached to its receipt. She herself had received at the same time, the same sum under the same will, under the same description and limitations, and even by the same clauses in the will, and was one of those who would be benefited by the failure of any particular legacy, and she could not have been ignorant of the limitations of *Susan E. Blake's* rights.

And again, as the pretended universal legatee of *Susan E. Blake*, she sent the paper, which she claimed to be her last will and testament, from the Parish of Madison, where she and *Susan E. Blake* had lived, and where *Susan* died, to Carroll Parish, for record and execution; and there, without notice to any one, without a representative for the absent heirs and *in a manner by no means public*, she obtained an order for its execution, and she did not present it in Madison parish, where alone the court had jurisdiction; where *Mrs. Groves*, one of the heirs, must have been notified; and where opposition to the execution of the said document would certainly have been made. The proceedings in Carroll parish were had, to give a color of authority to the assumptions of defendant, and can have no effect whatever in her favor. The case is not different from what it would have been, had she laid violent hands on the money and kept it. She, however, acted fraudulently, and not forcibly. The act of 1839; Session Acts, 166, sec. 15, repeals Art. 554, of C. P., and allows interest on unliquidated claims.

Those articles of the Code which allow interest *only* from judicial demand, apply *only* to contracts, and not to obligations of this character, *or quasi contracts*.

We are clearly entitled to interest at 5 per cent. from 16th December, 1839, on whatever sum we may recover, even if we are not entitled to 6 per cent. interest from 16th May, 1839.

MERRICK, C. J. We think the judgment of the the lower court ought to be affirmed. It is the duty of the courts of each State in this Union to give effect to all acts, deeds, wills and obligations, lawfully executed in every other State, when brought in contestation, as far as can be done without the manifest infringment of the settled policy of the State where the contestation arises.

It is not pretended that the will of *Benjamin Blake* was not legal by the laws of Virginia, where it was executed and the testator had his domicil, and that it did not operate upon his bank-stock and real and personal effects, which were sold in order to make a distribution under his will.   Neither can it be denied that the obligation (the bond), which *Susan E. Blake* executed for the return of the money at her death, was not valid by the laws of Virginia, nor will it be pretended that it would not be enforced in any other State of this Union, except the State of Louisiana.

The proposition that the courts of Louisiana cannot extend the usual comity of nations to enforce it, on account of the stringent provisions of her laws, involves a degree of singularity, that it behooves us to examine the grounds upon which it rests.

The supposed obnoxious clauses of *Benjamin Blake's* will are in these words, viz:

" I give to my daughters *Susan, Catherine* and *Adeline*, thirty-five shares each of Virginia bank-stock, to be held in trust by my trustees hereinafter named, until each of my said daughters arrives at the age of twenty-one years or marries ; and in the event of either of my said daughters dying without leaving child or children living at the time of their death, the said bank-stock so given to them is to return back and be considered as my estate, and be divided equally among my other children."

After the payment of certain particular legacies, the testator directs the sale of all his property, real and personal, to be divided equally among his six children, *Frances, Susan, Catherine, Adeline, Benjamin* and *Jane Louisa Blake*, " on the same conditions and limitations as directed and made with respect to the other devises to them in this my will."

The will was written in April and admitted to probate on the 19th of September, 1831.

On the 19th of April, 1834, on the delivery of the thirty-five shares of bank-stock and five thousand dollars in cash to *Susan Blake*, she, by her attorney-in-fact, under a power of attorney specially authorizing it, executed her bond, under seal, in the sum of $10,000, in favor of *Austin Brockenborough*, the executor of the will and one of the trustees, to secure him against future debts of the estate and indemnify him on account of the delivery of the stock and payment of the money, in consideration of the legacies under the will.   The bond recites the provisions of the will, and particularly that in case of the death of *Susan Blake* without issue, that the legacies should revert to the surviving children of said *Blake*.   The stock was transferred on the books of the bank to *Susan Blake*, and sold for $3,605.

*Austin Brockenborough* is a party to the suit individually and as authorizing his wife, one of the children of *Benjamin Blake*.   The defendant, *Sarah Adeline Blake* (*Mrs. Nutt*) forms against him a reconventional demand, and alleges that the whole of *Susan Blake's* interest in her father's estate, has not been paid over to her and that said executor has refused to pay respondent her interest in her father's, *Benjamin Blake*, estate.

In considering the question arising under this state of facts, the point of departure is the receipt of the money and bank-stock by the legatee, the conversion of the bank-stock into money, and the obligation assumed by her expressly or tacitly on those occasions.   The will being legal, where made with all its

16

dispositions, is withdrawn from our consideration, except so far as to ascertain how much of it the legatee has failed to execute under her contract.

For there can be no doubt that the exceptance of a legacy burdened with a *modus*, or lawful charges under a will, is itself a contract on the part of the person accepting, obliging him, impliedly at least, to comply with the conditions imposed by the will and to acquit the charges upon the legacy which he receives.   C. C. 1602, 1606, 1751 No. 4, 1752, 1626, 1696; 3 Sav., sec. 129, p. 233.   Then, under the Constitution of the United States, neither the State where this obligation is contracted, nor any other State can, by subsequent legislation, absolve the obligor from such obligation.

That the legacy in this case was accepted with all its burdens is shown by the power of attorney, authorizing the execution of bonds to refund and indemnify, the bond itself, the receipts and the acceptance of the residuary legacy under the will.

Is there anything in this obligation, (by which *Susan Blake* assumed to *return* these moneys at her death to the succession of her father,) which our courts ought to refuse to enforce?   We think not.

If *Susan Blake* had contracted upon any other valid consideration to pay the children of *Benjamin Blake* or *Austen Brockenborough*, executor, a sum of money, at her decease, in the event she died without issue, it would have been obligatory upon her estate, and would no doubt have been enforced by our courts.

Is it less obligatory because the consideration was a legacy under a valid will of a sister State, although the will might have been considered informal or illegal, if it had been made under our laws?   The rule is, the validity of the contract is to be decided by the law of the place where it was made.   If valid there, it is by the general law of nations, *jure gentium*, held valid every where, by tacit or implied consent.   Story's Conflict, sec. 242, and authorities there cited.   Then *Susan Blake* made a valid contract by the law of the country where made, to leave at her death, if she died without issue, the money and bank-stock of the Bank of Virginia, which she had received from her father's estate to his representative.   She sold the bank-stock, and thus, by the laws of the country, where she lived (Mississippi), and the country where the stock was payable and transferrable, she bound herself to account for the price in same manner.

Now, it is said, that our courts cannot enforce this contract, because it is a substitution and *fidei-commissum* which are reprobated by our law, and therefore cannot be enforced by our courts.

As it has often been explained by this court, the object of these provisions of the Code is to prevent titles to property from becoming complicated, tied up and encumbered, so that the property cannot at all times be disposed of by the united action of those holding interests in and rights upon the same.

Now, what property is there here which is tied up or encumbered?   The bank-stock?   The domicil of that is Virginia, and having been sold, it is represented by its price, $3,505.   But it is said, at her death, *Susan Blake* bound herself *to return* the money to the estate of her father?   Be it so. She did not promise to preserve it; to keep each identical dollar and return that to her father's estate.   On the contrary, she was to have the use of the money as long as she lived, and she *contracted* to return as much other coin only in the event she should die without issue.   If that is a *fidei-commissum*

or a prohibited substitution, then the *thing* which the depositary receives and promises to preserve and return to the depositor, or the sum of money which my friend receives from me and promises to return in one week or ten years, are *fidei-commissa* and substitutions. See 5 Toul., No. 24; 3 Marcadé, 460; Zachariæ, part 2, book 2, sec. 694.

In the matter before us, there is no property tied up, and no estate encumbered so that a good title cannot be made to any immovable, movable or slave, and no promise to preserve the thing. The only encumbrance is a debt, once conditional, now absolute, which can be discharged at any time by payment, release, or any of the modes in which debts are discharged.

But it is said, that the will of *Benjamin Blake* was never recorded in Louisiana. It was not necessary. It operated upon property in Virginia and was carried into effect there. There is no more need of its being recorded in Louisiana to enable plaintiffs to recover, than there would have been if plaintiffs were suing to recover slaves given them under the will, and which some person had illegally taken from their possession and removed to Louisiana.

On this branch of the plaintiff's demand, we see no reason to depart from the conclusions of this court in the case of *Hayden* v. *Nutt*, 4 An. 70, although we admit, as contended for by defendant's counsel, that the judgment in that case has not the force of the thing adjudged between these parties.

On the other branch of this case, wherein the plaintiff's claim that they are the heirs-at-law of *Susan E. Blake*, and that the pretended will under which the defendant holds is a nullity, we are of the opinion that the defence must prevail.

It is objected to the will, that it was admitted to probate in the parish of Carroll, when the domicil of *Susan E. Blake* was in the parish of Madison, and, therefore, the Probate Court of the parish of Carroll was without jurisdiction, and the order admitting the will to probate was a nullity. The proof makes it probable that the residence of *Dr. Nutt* was that of the testatrix, at the time of her death. It further shows, that the residence of *Dr. Nutt* was in the parish of Carroll, up to the promulgation of the Act of the Legislature, approved March 14th, 1839, by which that portion of the parish of Carroll, which embraced *Dr. Nutt's* dwelling, was added to the parish of Madison.

The will was admitted to probate on the 21st day of May, 1839. It was, therefore, the duty of the plaintiff to show that the Act of 14th March, 1839, had been promulgated on the 21st day of May, 1839, in the parish of Carroll. See Acts of 1827, p. 172, and Acts of 1855, p. 341, sec. 2. In the absence of this proof, we are bound to conclude that the Probate Court of the parish of Carroll had not been divested of jurisdiction.

It is not necessary to determine the question whether, if the Act had been promulgated, it would have also been encumbent upon the plaintiff to show that the boundary line had been surveyed or was otherwise well defined and known. In this form of action, plaintiffs cannot raise the question whether the will was admitted to probate upon sufficient proof.

The plaintiffs claim interest at the rate of five per cent. on the amount received by *Susan E. Blake* from the succession of *Benjamin Blake*, from the date of her death, on the ground that *Mrs. Nutt* received what was not due to her, and that there was a want of good faith on her part, and, therefore she is bound, under Articles 2279 and 2289, to restore the capital and interest from such date.

By *Susan E. Blake's* will, the defendant was made her universal legatee. *Mrs. Nutt*, therefore, cannot be charged with bad faith in taking possession of the *succession* of her sister. The claim of the plaintiffs was but a debt due by the succession, which was required to be presented and liquidated like any other demand, as is evident from what we have already said. There is then no ground upon which to rest a claim for interest on account of bad faith.

. The only remaining question to be considered, is the plea of prescription. At the time the action accrued, the prescription applicable to all the plaintiffs except *Mrs. Groves*, (they being absentees) was twenty years. By the Act of of 14th March, 1848, the prescription was reduced to ten years. This Act was promulgated on the 4th day of April, and was in force in the parish of Carroll on the fourth, or, at the farthest, on the fifth day of May of that year. Consequently, according to the rules of computation established by this court, five years, six months and seven days were needed, in order to accomplish the period of prescription, from the 4th of May, 1848. The suit was commenced on the 17th day of June, 1853, just five years, one month and thirteen days from the promulgation of the statute, consequently prescription had not run as to such of the defendants as were non-residents of the State of Louisiana.

As to *Mrs. Groves*, who resided in Louisiana, prescription did not run. She could not have been, under any circumstances, more than a few months over twenty-one years of age at the date of the institution of this suit. The ten years' prescription did not run against her during her minority. C. C. 3487, 3508, 3506, 3507.

Judgment affirmed.

BUCHANAN, J., dissenting. Upon the allegations of the petition it is seen, that the case of plaintiffs divides itself into two branches—first, a claim under *Benjamin Blake's* will to that portion of his estate devised to *Susan*; and, second, a claim to the estate of *Susan Blake*, as intestate.

Upon the first of these claims a serious doubt has arisen in my mind, whether the plaintiff, *Mrs. Groves*, who was not *in esse* at the time of *Benjamin Blake's* death, and who is not a child but a grandchild of *Benjamin Blake*, can be considered as entitled to any portion of the estate under his will. *Mrs. Grove's* mother was *Catherine Blake*, who was a daughter of *Benjamin Blake*, and was a minor and unmarried at the time of his death. Several years after that event (in 1832 or 1833) *Catherine* was married to *Mr. Dawson*, of which marriage she had issue the plaintiff, *Mrs Groves*, and died in 1835, four years before her sister *Susan*. If we are to consult alone *Benjamin Blake's* intention in regard to the limitation of his bequest to his daughter *Susan* we find his expressions to be that the property devised "is to return back and be considered as my estate, and be divided equally among *my other children*."

That the objects of the testator's contingent liberality, were literally *children*, as expressed, and not *children of children*, may be gathered from another portion of his will, wherein it appears that the testator had then living a grandchild, the child of a daughter deceased, to whom he bequeaths a legacy, and in relation to whom he says "I do not intend that my said grandson shall ever receive anything more from my estate as heir of either of my children."

Or if we look beyond the will, into a standard authority for the law of Virginia on this subject, it seems that an executory devise must be limited to the period of a life in being at the death of the testator, Lomax's Digest, pages 280 to 295. Thereupon the limitation to *Benjamin Blake's* other children

contained in his will, cannot, in my judgment, be construed to extend to issue of those children not in being when the will was made, and my opinion is, that *Mrs. Groves* can take nothing under the executory devise in question.

As to the other three plaintiffs, the son and two daughters surviving of *Benjamin Blake, senior,* my opinion is, that they should have sued upon the refunding bond of *Susan Blake;* and not, as they have done, upon the will of their father. The clause of that will upon which they base their claim, contains a substitution which would avoid a Louisiana will, and which this court has refused to give effect to by its decree, when contained in a foreign will. In *Harper* v. *Stansborough,* 2d An., 377, it was held unanimously by the court, after full argument, that a will made in another State, by a resident of that State, whereby the testator directed that if either of his two sons, to whom he bequeathed his property, "should die without a lawful heir, his part, real and personal, should go to the survivor," created a substitution prohibited by our laws, and could not be enforced in Louisiana, although it might confer a title upon the survivor by the laws of the State where the testator died. The court observed, through its organ, Chief Justice Eustis,—"Nor does it appear material in relation to the nullity of the substitution as the basis of a title, whether the testamentary disposition acts upon the property within this State at the time of its taking effect, or subsequently, on the translation of the property to this State. It is the operation of the testamentary disposition on property within this State, which the law reprobates," &c. On the other hand it has been assumed, that the validity of the very testamentary disposition now under consideration has been passed upon, and decided affirmatively, by the same bench which decided the case of *Harper* v. *Stansborough.* I think this is a mistake.

The case cited, *Hayden* v. *Nutt,* 4 An., 65, was a contest between a creditor of one of the present defendants, and that defendant's wife and co-defendant herein, relative to the amount of *Mrs. Nutt's* rights for paraphernal property received by her husband. Among the items composing her claim, for which she had obtained judgment in an action against her husband, was her inheritance from her sister *Susan Blake.* That portion of her claim was held by this court not to be proved with sufficient certainty, and the decree reserved *Mrs. Nutt's* rights as legatee of *Susan Blake* to be prosecuted by way of third opposition or otherwise. So, that, in fact there was no decision upon the effect of *Benjamin Blake's* will at all. It is true the court, *arguendo,* supposed the case that the representative of *Benjamin Blake's* succession, and *Adeline Blake,* as legatee of *Susan,* were before it, claiming from *Susan Blake's* administrator a distribution of her estate. "*Adeline Blake*"—says Judge Slidell—"would demand the whole estate under the will, and *Brockenborough,* as the executor and trustee of the children of his testator, would demand the restoration of the amount which had been paid to *Susan Blake.* It seems to us, that in such a contest *Brockenborough* would prevail. To the tacit obligation of *Susan Blake* to respect the condition attached to the bequest, was superadded a new and express contract, at the time of receiving the legacy, that the amount should be restored, if she died without issue. There is no reason to believe that this conditional contract for the payment of a sum of money at a future time was invalid under the laws of Virginia and Mississippi; and it would be straining the policy of our own laws to an unreasonable extent to refuse to enforce it here in a contest between the legatee of *Susan Blake* and the executor of her father's will."

This portion of the opinion delivered in *Hayden* v. *Nutt* is already *obitur dictum.* But giving it all the effect of authority, what does it amount to? Nothing more than that an action could be maintained in Louisiana upon the refunding bond given by *Susan Blake* to her father's executor when he paid over to her her share in her father's estate under his will; a personal action upon her contract, not an action upon her father's will. It suffices to say, that the action now before us; is not an action upon the bond in question.

I concur in the affirmance of the judgment of the District Court maintaining the will of *Susan Blake;* but think that it should be reversed in what concerns the claim of plaintiffs under the will of *Benjamin Blake, senior*; with a reservation of plaintiff's right of action upon the refunding bond given by *Susan Blake* to her father's executor.